AMERICAN TELEPHONE & TELEGRAPH COMPANY et al., Plaintiffs,

v.

MILGO ELECTRONIC CORPORATION and International Communications Corporation, Defendants.

No. 76 Civ. 996.

United States District Court, S. D. New York.

Jan. 19, 1977.

Fish & Neave, New York City, for plaintiffs, by Albert E. Fey, Seymour E. Hollander, Western Elec. Co., Inc., New York City, of counsel.

Morgan, Finnegan, Pine, Foley & Lee, New York City, for defendants, by Alfred P. Ewert, New York City, Stanley R. Jones, Harold L. Jackson, Jackson & Jones Law Incorporation, Tustin, Cal., of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

The defendants, Milgo Electronic Corporation ("Milgo") and International Communications Corporation ("ICC"), have moved to transfer the first cause of action in this case to the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1404(a). The major question presented is whether Kansas is a district in which this cause of action "might have been brought" within the meaning of § 1404(a).[1]

### I.

Before addressing the merits, a brief description of the chronology of events will be

---

1. "28 U.S.C. § 1404(a) provides that 'For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'"

helpful. In January, 1976 Milgo sued American Telephone and Telegraph Company ("AT&T"), Western Electric Company, Inc. ("Western Electric") and others in the United States District Court for the District of Kansas seeking a declaratory judgment that several of its patents were valid and that the defendants were infringing them.[2] The case was assigned to Judge O'Connor. Another judge of the Kansas District Court, Judge Templar, already had declared two of these patents to be valid and infringed in a suit by Milgo against different parties.[3] Defendants have asserted that the Kansas District Court is not on an individual calendar system, and therefore that after pre-trial supervision the *Milgo* case against AT&T et al. may well be assigned to Judge Templar.

One month after the Kansas suit was filed two of the defendants in that suit, AT&T and Western Electric, joined with Bell Telephone Laboratories, Inc. ("Bell Labs"), a wholly owned subsidiary of AT&T, to file this New York action against Milgo and its wholly owned subsidiary, ICC. In the first cause of action they seek a declaratory judgment that four of the patents involved in the Kansas suit are invalid and that they are not infringing them. The second cause of action is one claiming patent interference under 35 U.S.C. § 291. We stayed this second cause of action pending a determination of this issue by the patent office.[4]

On April 12, 1976 the defendants moved to transfer the first cause of action to Kansas. We deferred decision pending the outcome of a motion that had previously been filed in Kansas by AT&T and Western Electric to transfer that action here. On July 23, 1976 the Kansas court denied transfer of that action to New York on the grounds that the defendants AT&T and Western Electric had failed to sustain their burden of showing that transfer would serve the convenience of the parties, witnesses, and be in the interests of justice.[5] Thus, decision of Milgo's and ICC's motion to transfer the first cause of action in this case to Kansas is now in order.

## II.

The threshold requirement for a change of venue to Kansas under Section 1404(a) is that Kansas must be a district in which this action "might have been brought". This means that at the time this New York complaint was filed, the defendants must have been amenable to personal jurisdiction in Kansas, subject matter jurisdiction must have existed there, and venue must have been appropriate. *Thee v. Marvin Glass and Associates* (S.D.N.Y.1976), 412 F.Supp. 1116. Subject matter jurisdiction has not been contested.

---

2. *Milgo Electronic Corporation v. American Telephone and Telegraph Company, Western Electric Company, Inc., Southwestern Bell Telephone Company and Boeing Computer Services, Inc.*, Civil Action No. 76–15–C2. Plaintiffs have not contested defendants' assertion that all patents involved in the first cause of action here are also involved in the Kansas action.

3. Defendants' Memorandum of Points and Authorities filed April 12, 1976.

4. Memorandum and Order, June 24, 1976.

5. Judge O'Connor's decision, stated on the record in open court:

"I have gone over this file and I agree that the defendants maybe have some basis, certainly, as to convenience and all, but the law is, of course, as you all know, that great deference must be shown to the plaintiff's choice of forum and the burden is clearly on the defendants to establish the reasons and the statutory reasons for the Court to exercise discretion and transfer the case, but the Court finds and concludes, and I have gone over all these documents and there is no use to write an opinion and just rehash all that each of you have done and done very well, certainly on your own behalves, but the Court finds and concludes that the defendants have failed to sustain their burden of showing that for the convenience of parties and witnesses and particularly in the interest of justice that the case should be transferred. In fact, the Court is of the opinion that a transfer would not be in the interests of justice, so the defendants A.T.&T. and Western's motion to transfer is denied. The defendants Southwestern Bell and Boeing Computer motion to sever and say is denied."

Defendants claim that all or at least some of the plaintiffs could have sued them in Kansas under one of two theories. First, they claim that all three plaintiffs in this action could have sued ICC in Kansas independently of the Milgo action since ICC was "doing business" in Kansas within the meaning of 28 U.S.C. § 1391(c) [6] at the time this New York action was instituted. Thus, although ICC was not incorporated in Kansas and was not licensed to do business there (its February, 1974 license having lapsed in July, 1975), defendants claim ICC was nonetheless doing business in Kansas and thus venue would lie in Kansas under § 1391(c). Defendants further argue that if the suit could have been brought against ICC in Kansas, that it could also have been brought against its parent Milgo. Although Milgo was also not incorporated in Kansas and was not licensed to do business in Kansas at the time the New York suit was instituted, defendants argue that Milgo was doing business in Kansas through its wholly owned subsidiary, ICC, and therefore was also amenable to suit in Kansas by all three plaintiffs.[7]

We will not at this time accept this theory because ICC has only made the conclusory allegation that it was "doing business" in Kansas [8] and has supplied no factual support for such conclusion—either by affidavit or otherwise. However, if within ten days of the filing of this opinion defendants move to reopen upon affidavits providing a factual basis for such allegation, we will entertain the motion.[9]

Alternatively, defendants point out that Milgo's earlier action in Kansas against two of the three plaintiffs here, seeking a declaratory judgment as to the same issues involved in the first cause of action here,

enabled these plaintiffs (AT&T and Western Electric) to bring this cause of action as a counterclaim against Milgo in the Kansas action. Such ability to have counterclaimed, they assert, satisfies the Section 1404(a) "might have been brought" requirement. Plaintiffs, on the other hand, argue that the ability to have filed a counterclaim in the district to which transfer is sought does not satisfy Section 1404(a).

Section 1404(a) provides, in pertinent part, that "a district court may transfer any civil action to any other district or division where it might have been brought." Plaintiffs argue that the language quoted allows transfers only to districts where "it", i. e. the *action* "might have been brought," and does not allow transfers to districts where no independent action could have been filed but the claims could have been raised by counterclaim. In support of this argument they cite language from *Hoffman v. Blaski* (1960), 363 U.S. 335, 344, 80 S.Ct. 1084, 4 L.Ed.2d 1254, to the effect that to satisfy Section 1404(a), the district to which transfer is sought (the "transferee district") must be one in which, at the time the action was commenced, the plaintiffs had the right to sue "independently of the wishes of the defendant."

The Second Circuit has not yet ruled on the question whether the ability to have filed a counterclaim in the transferee district at the time an action was instituted satisfies Section 1404(a). In *New York Central Railroad Company v. United States* (2d Cir. 1961), 200 F.Supp. 944, the Court was presented with the question whether the ability to have *intervened* in another action pending in the district to which transfer was sought satisfied Section 1404(a). The court disallowed transfer be-

---

**6.** That section provides:

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

**7.** Both Milgo and ICC are incorporated in Florida.

**8.** Defendants' supplemental reply memorandum filed October 27, 1976.

**9.** In view of this disposition we need not reach at this time the collateral estoppel question raised by plaintiff's citation of Judge Skinner's decision in *Codex Corporation, et al. v. Milgo Electronic Corp.* (D.Mass. July 23, 1976), Civ. Action No. 76–793–S.

cause it found, assuming that plaintiffs could have intervened, that they could not have raised their claims in the transferee district. By way of dictum the court stated that the argument that the ability to have asserted a *claim* in the transferee district does not satisfy Section 1404(a) "is not to be readily dismissed, especially in view of the tendency to give a rather literal reading to § 1404(a) evidenced by *Hoffman*." 200 F.Supp. at 948. This language could be read as supporting the plaintiffs' position here. However, it does not purport to be anything more than dictum.

Two courts from other circuits have considered the question and have squarely held, after considering *Hoffman*, that the ability, at the time an action is instituted, to have raised the subject matter by counterclaim in the transferee district satisfies the "where it might have been brought" requirement of Section 1404(a). *A. J. Industries, Inc. v. U. S. District Court, C. D. of California* (9th Cir. 1974), 503 F.2d 384, 387–389; *Leesona Corp. v. Duplan Corp.* (D.R.I. 1970), 317 F.Supp. 290, 293. We agree.

In *Hoffman*, the defendants in an action in the United States District Court for the District of Texas moved to transfer the action to Illinois and consented to venue and personal jurisdiction in Illinois. No action was then pending in Illinois involving any of the parties to the Texas suit. The Supreme Court held that the action could not be transferred pursuant to § 1404(a) upon the motion and consent of the defendants to a district where, at the time the action was filed, venue did not exist and the defendants were not within the reach of process of the transferee court. Although the court did cite with approval language of the Seventh Circuit to the effect that transfers under § 1404(a) can only be to districts where a plaintiff has the right to sue "independently of the wishes of defendant" the full quotation and other language in the opinion reveal the court meant that transfers can only be to districts where

a plaintiff has the right to bring his claims independently of the defendant giving his consent *after* plaintiff has filed his action. Thus, the court stated:

"We agree with the Seventh Circuit that:

'If *when a suit is commenced*, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district "where [the action] might have been brought." If he does not have that right, independently of the wishes of defendant, it is not a district "where it might have been brought," and it is immaterial that the defendant *subsequently* [makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum].'" (emphasis supplied).[10]

The court also cited with approval the following language from the dissenting opinion of Judges Hastie and McLaughlin in *Paramount Pictures, Inc. v. Rodney* (3d Cir. 1951), 186 F.2d 111:

"But we do not see how the conduct of a defendant *after suit has been instituted* can add to the forums where 'it might have been brought.' In the normal meaning of words this language of Section 1404(a) directs the attention of the judge who is considering a transfer to the situation which existed when suit was instituted." (emphasis supplied).[11]

Thus, in *Hoffman* the Supreme Court did not hold or imply by its approval of the language "independently of the wishes of the defendant" that a plaintiff's ability, at the time he instituted suit, to have filed a counterclaim in an action pending in the transferee district would not establish that district as one meeting the Section 1404(a) "might have been brought" requirement.

Therefore, we agree with the Ninth Circuit in *A. J. Industries, supra,* and with the Rhode Island District Court in *Leesona, supra* that a plaintiff's ability at the time he instituted an action to have raised the

---

**10.** 363 U.S. at 344, 80 S.Ct. at 1090.

**11.** *Id.* at 343, 80 S.Ct. at 1089.

subject matter of that action by counterclaim in an action pending in the transferee district qualifies that district as one in which "it might have been brought" under 28 U.S.C. § 1404(a).

However, we also agree with plaintiffs and with the court in *Leesona, supra,* that a suit cannot be transferred on this theory as to a defendant in the transferor district who was not a plaintiff in the transferee district at the time the suit sought to be transferred was filed. No right of counterclaim existed as to such a defendant at the appropriate time. Defendant ICC was not a plaintiff in the Kansas action and was, therefore, not subject to a counterclaim there.[12] Unless the defendants take advantage of the opportunity to reopen for the purpose of establishing that ICC was in fact "doing business" in Kansas and thus suable there at the time this suit was commenced (see p. 53, *supra*), we will not transfer the first cause of action by all three plaintiffs against ICC.

By the same token, plaintiff Bell Labs could not have counterclaimed against Milgo in Kansas since Bell Labs was not a defendant in Kansas. Therefore, we will not transfer Bell Lab's claim to Kansas. We are not persuaded by the defendants' contention that Bell Labs could have sued Milgo by counterclaim in Kansas citing Rules 13(h)[13] and 20(a)[14] of the Federal Rules of Civil Procedure which permit the joinder as parties to a counterclaim of persons other than those who are parties to the original action. Bell Labs could have asserted its claims against Milgo only if the defendants AT&T and Western Electric had asserted a counterclaim, which they did not. Since Bell Labs' ability to have sued Milgo in Kansas depended on a contingency which did not take place, we find that Kansas is not a district in which Bell Labs "might have brought suit."

### III.

We stated in open court that if Kansas was a district to which the action or any part of it could be transferred, that severance and transfer would serve the convenience of the parties, the witnesses and be in the interests of justice. We adhere to that finding.

In light of the above, the first cause of action shall be severed and the claims of AT&T and Western Electric against Milgo shall be transferred to Kansas. Unless defendants reopen this motion as above indicated, the claims of all plaintiffs against ICC and all claims of Bell Labs shall remain here and shall be stayed pending the outcome of the Kansas suit.

SO ORDERED.

---

12. Only Milgo, its parent, was a plaintiff in the Kansas action.

13. "13(*h*) *Joinder of Additional Parties.* Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20."

14. "20(*a*) *Permissive Joinder.* All persons (and any vessel, cargo or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities."